**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TONY D. PIPER, | ) | |
|                Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-06-1179-M |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
|                Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, Mr. Tony D. Piper, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying Mr. Piper's application for supplemental security income benefits. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**I.     Procedural Background**

Plaintiff protectively filed his application for supplemental security income benefits on October 29, 2004. AR 54-59. The application was denied initially and upon review. AR

---

[1]Michael J. Astrue became Commissioner of the Social Security Administration on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is hereby substituted for Commisioner Jo Anne B. Barnhart as the defendant in this suit.

22, 23.  At Plaintiff's request, an administrative hearing was held on March 23, 2006,  AR 247-298, and an administrative law judge (ALJ) issued an unfavorable decision on March 31, 2006.  AR 10-21.  The Appeals Council denied Plaintiff's request for review on August 25, 2006, and the decision of the ALJ became the final decision of the Commissioner.  AR 6-9

## II.     The Administrative Decision

The ALJ applied the five-step sequential evaluation process.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also* 20 C.F.R. §416.920.  The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during any period relevant to the decision.  AR 15.  At step two, the ALJ determined that Plaintiff's reflex sympathetic dystrophy of the right upper extremity is a severe impairment.  AR 16.  At step three, the ALJ considered the listings of impairments, specifically at § 1.01 (disorders of the musculoskeletal system) and determined that Plaintiff's severe physical impairment does not meet or equal a listing.[2]  AR 16.

The ALJ next determined Plaintiff's residual functional capacity.  The ALJ found that Plaintiff has the residual functional capacity to perform light work, reduced by his inability to lift or operate hand controls with his right upper extremity, by his inability to reach, handle, finger or feel with the right upper extremity, and by his inability to more than occasionally climb ladders, ropes or scaffolds.  AR 16, 18.  The ALJ determined that Plaintiff

---

[2]*See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

cannot do his past relevant work because of his physical impairment and resulting limitations. AR 20.

At step five, based on the testimony of the vocational expert (VE), the ALJ found that Plaintiff could perform the jobs of information clerk, usher, and telephone quotation clerk, jobs which the ALJ found to exist in significant numbers both in the local and national economy. AR 21. Therefore, the ALJ determined Plaintiff is not disabled. *Id.*

### III.   Issues Presented for Judicial Review

Plaintiff presents the following issues for judicial review: (1) whether the ALJ erred as a matter of law in failing to apply the correct standard in evaluating the opinion of the treating physician; and (2) whether the ALJ erred in failing to investigate the conflicts between the VE's testimony and job descriptions in the Dictionary of Occupational Titles (DOT).

### IV.   Standard of Review

Because the Appeals Council denied review of the ALJ's decision, that decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* 331 F.3d at 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it

is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**V.     Analysis**

   **A.     Claim One – Analysis of the Opinion of the Treating Physician**

The ALJ found that Plaintiff has been diagnosed with and treated for reflex sympathetic dystrophy (RSD) of the right upper extremity. AR 16. RSD is also known as chronic regional pain syndrome and complex regional neuropathic pain syndrome (AR 218, 220) and is characterized by intense pain. *See* SSR 03-2P, 2003 WL 22814447 (Evaluating Cases Involving Reflex Sympathetic Dystrophy/Complex Regional Pain Syndrome). In this case, Plaintiff's pain is in his right wrist and hand. Plaintiff testified that the onset of his disability was September 15, 2004, the date on which he went to an emergency room during the night seeking relief for severe pain. AR 250.

Dr. Kenneth A. Hieke has been Plaintiff's treating physician since 2004 when Plaintiff was being treated at the Mercy Hand Clinic. AR 176, 220.[3] During 2005, Plaintiff was treated by Dr. Hieke regularly for right wrist and hand pain with prescription narcotic

---

[3]When the Mercy Hand Clinic closed, Plaintiff continued treatment with Dr. Hieke at Dr. Hieke's new clinic. AR 220.

medications including OxyContin, Neurontin, and OxyIR. AR 220-233. Plaintiff also received treatment from Dr. Jack E. Marshall who administered several injections for stellate ganglion blocks. AR 145-181.

On February 16, 2006, Plaintiff underwent exploratory surgery of the scaphotrapezotrapezoidal joint. Dr. Hieke reported chronic granulation consistent with chronic osteomyelitis. AR 230. Dr. Hieke performed irrigation, debridement and curettage of the osteomyelitis in the carpal bones. AR 231.

Dr. Hieke submitted a medical opinion regarding Plaintiff's ability to do work-related activities stating that Plaintiff could occasionally lift ten pounds and frequently lift less than ten pounds, that he could walk or stand about three hours in an eight-hour day, and that he could sit about six hours in an eight-hour day. As for postural limitations, Dr. Hieke stated that Plaintiff could frequently twist, stoop and crouch. Further, he stated that Plaintiff could frequently climb stairs but could never climb ladders. Physical functions affected by Plaintiff's impairment included limitations in reaching, handling, fingering, feeling and pushing or pulling. Dr. Hieke stated that Plaintiff should avoid even moderate exposure to extreme cold. Finally, Dr. Hieke stated that Plaintiff could be expected to be absent from work because of his impairments about three times per month. AR 234-236.[4]

---

[4] Dr. Carmen Bird and Dr. Lise Mungul also completed physical RFC forms. *See* AR 184-192; 210-217. Both found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, that he could stand or walk about six hours in an eight-hour workday, and that he could sit about six hours in an eight-hour workday. Dr. Bird stated that Plaintiff should not do any lifting or operate any hand controls with his right upper extremity. AR 185. Both doctors stated that Plaintiff's abilities to reach, handle, finger and feel with his right upper extremity (manipulative (continued...)

When evaluating the opinion of a treating physician such as Dr. Hieke, the ALJ must follow a sequential analysis to determine whether the opinion is entitled to controlling weight or some lesser, non-controlling weight. In the first step of this analysis, the ALJ should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the answer to both questions is "yes," the ALJ must give the opinion controlling weight. *See Watkins*, 350 F.3d at 1300. But even if he determines that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether, or assigned some lesser weight. The ALJ does this by applying the factors listed in 20 C.F.R. § 416.927(d)(2). *See Watkins*, 350 F.3d at 1300. These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

---

$^{4}$(...continued)
limitations) are limited. AR 187; 213. The ALJ's final hypothetical question to the VE was based on the RFC form completed by Dr. Mungul. AR 293.

*Id.* at 1301 (quotation omitted). Where the ALJ rejects the treating physician's opinion, he must give "specific, legitimate reasons" for doing so. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

In this case, the ALJ found that Dr. Hieke's opinion was "not entitled to controlling weight," because Plaintiff did not have a "medical condition involving the left upper extremity, neck, back, knees, legs, ankles or any other physical area that would preclude light work activity[.]" AR 18. It appears that the ALJ concluded that Plaintiff could perform the lifting required for light work with solely with his non-dominant left hand.[5] The record does not support this conclusion. Moreover, the ALJ erred as a matter of law in failing to complete the sequential analysis by disclosing what weight, if any, he was giving Dr. Hieke's opinion. The VE testified that a hypothetical individual with the limitations in Dr. Hieke's RFC assessment, particularly the limitation of missing work three times a month due to his impairment, would be unable to sustain full-time employment even at the sedentary level. AR 289-290.[6] The medical record in this case indicates that Dr. Hieke's opinion was entitled to at least some weight, if not controlling weight. As discussed *supra* at 4-5**,** the record indicates that Plaintiff suffers from RSD, that Dr. Hieke has prescribed strong narcotic pain medication for the condition, and that Plaintiff has undergone stellate ganglion block procedures in an attempt to control his pain. Plaintiff testified that side effects of the narcotic

---

[5]Plaintiff testified that he is right-handed. AR 254.

[6]According to the VE, even the RFC posed by Dr. Mungul would result in a reduced number of light and sedentary jobs which a hypothetical individual with Plaintiff's limitations could perform. AR 295.

medication impairs his ability to operate machinery and equipment. AR 257. On remand, the ALJ should complete the sequential analysis by considering the relevant factors and specifying what weight, if any, is assigned to the opinion of Plaintiff's treating physician and why.[7]

### B.     Claim Two – Conflicts Between the DOT and the Testimony of the VE

Plaintiff contends that the ALJ erred in relying on the VE's expert testimony that conflicted with job descriptions in the DOT without investigating the conflict by eliciting testimony from the VE to reconcile the differences. This point is well-taken. "An ALJ does have a duty to investigate and obtain a reasonable explanation for any conflict between the DOT and expert testimony before the ALJ may rely on the expert testimony as substantial evidence." *Hackett v. Barnhart* 475 F.3d 1166, 1171 (10th Cir. 2007) (*citing Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999)).

In this case, the ALJ's RFC included "no reaching, handling, fingering or feeling with the right upper extremity[.]" AR 18. According to the DOT, however, the job of information

---

[7]The Social Security ruling specifically addressing the evaluation of cases involving RSD is instructive:

> Careful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing bases . . . . Opinions from an individual's medical sources, especially treating sources, concerning the effect(s) of RSDS/CRPS on the individual's ability to function in a sustained manner in performing work activities . . . are important in enabling adjudicators to draw conclusions about . . . the individual's RFC.

SSR 03-02p, 2003 WL 22814447 at *7.

clerk requires frequent reaching and handling and occasional fingering. *See* DOT § 237.367-018.  The job of usher requires occasional reaching, handling and fingering.  *See* DOT § 344.677-014.  The job of telephone quotation clerk requires frequent reaching, handling and fingering.  *See* DOT § 237.367-046.  Neither the DOT job descriptions nor the testimony of the VE indicates whether the required reaching, handling, fingering or feeling could be done by a person who can use only his non-dominant hand.  Having failed to elicit an explanation of the discrepancies between the VE's testimony and the DOT listings, the ALJ's finding that Plaintiff could perform the jobs identified by the VE is not supported by substantial evidence. *See Haddock* at 1091("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").  On remand, the ALJ should address the apparent conflicts between the vocational expert's testimony and the applicable DOT listings and develop the record by obtaining vocational expert testimony to address these apparent conflicts.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by November  8th , 2007. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  19th  day of October, 2007.

*[signature: Valerie K. Couch]*

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE